STATE of Arkansas *v.* CRITTENDEN COUNTY, et al.

94-930, 94-931                                      896 S.W.2d 881

Supreme Court of Arkansas
Opinion delivered May 1, 1995

*Winston Bryant*, Att'y Gen., by: *Patricia Van Ausdall*, Asst. Att'y Gen., for appellant.

*Hale, Fogleman & Rogers*, by: *Joe M. Rogers*, for appellee.

JACK HOLT, JR., Chief Justice. We have before us a consolidated appeal and cross-appeal which deals with the assignment of responsibility for payment of attorney's fees, investigative, witness, and other expenses incurred during the course of certain criminal trials in the Second Judicial District of the State of Arkansas. A single point is raised on direct appeal: whether the trial court erred in interpreting the Arkansas Public Defender Commission Act (Act 1193 of 1993, Acts of Arkansas) to require the State of Arkansas, rather than Crittenden County, to be responsible for payment of attorney's fees to appointed counsel for services rendered after July 1, 1993. On cross-appeal, issues have been raised concerning the sufficiency of the attorney's fees; the reimbursement of out-of-pocket expenses; and the responsibility of the county, as opposed to the state, for payment of trial-related expenses.

The State of Arkansas, appellant and a cross-appellee, contends that the Act should be interpreted in a manner consistent with the interpretations given to similar legislative acts in other jurisdictions and that public policy requires that the Act be applied as of its effective date of July 1, 1993, the effect of which is to require the county to assume payment for attorney's fees to

appointed counsel. We hold otherwise. Under the circumstances of this case, the circuit court did not err in finding the State of Arkansas responsible for payment of attorneys' fees after July 1, 1993.

Appellee and cross-appellant Crittenden County argues one issue in its cross-appeal: whether the trial court erred in requiring the county to pay expenses incurred on behalf of the indigent criminal defendants. We agree with Crittenden County that the trial court erred in this regard and accordingly order the trial court to enter a judgment consistent with our holding. The state is responsible for the payment of all related expenses.

Attorneys Daniel T. Stidham, Gregory L. Crow, Val P. Price, Scott Davidson, Paul N. Ford, and George R. Wadley, Jr., also filed a three-point cross-appeal, contending that the trial court erred in (1) establishing the amount of attorneys' fees for Messrs. Stidham and Crow and for Messrs. Price and Davidson, as the amounts were inadequate under this court's previous holdings; (2) establishing the amount of out-of-pocket costs due Messrs. Stidham and Crow; and (3) establishing the amounts of compensation for Messrs. Stidham and Crow's experts and for Messrs. Stidham and Crow's and Messrs. Price and Davidson's investigator, as the amounts were unreasonably low. There being no merit in the attorneys' argument, we hold that the trial court did not err under these circumstances.

## Facts

Damien Echols, Charles Jason Baldwin, and Jessie Lloyd Misskelley, Jr., were charged with capital murder in the Crittenden County Circuit Court. Each defendant was found to be indigent, and two attorneys were appointed in June 1993 to serve jointly as trial counsel for each defendant. Because of a conflict, the Crittenden County public defender did not represent any of the defendants. Instead, trial counsel were called from private practice: Val Price and Scott Davidson were appointed to represent Echols; Paul Ford and George Wadley were appointed to represent Baldwin; and Daniel Stidham and Gregory Crow were appointed to represent Misskelley.

Meanwhile, on April 19, 1993, the General Assembly enacted Act 1193 of 1993, the Arkansas Public Defender Commission

Act, codified at Ark. Code Ann. §§ 16-87-201 — 16-87-214 (Supp. 1993). The act became effective on July 1, 1993. Up to that point, the State of Arkansas, pursuant to this court's holdings in *State* v. *Independence County*, 312 Ark. 472, 850 S.W.2d 842 (1993), and *State* v. *Post*, 311 Ark. 510, 845 S.W.2d 478 (1993), was held responsible for indigent defense fees. Under the new act, however, the responsibility for the payment of indigent defense fees was shifted to the counties.

On September 27, 1993, the Crittenden County Circuit Court held a hearing regarding the issue of whether, in the light of the new act, the State of Arkansas or Crittenden County should be responsible for attorneys' fees and costs in the cases. After the hearing, the court, requesting that briefs be submitted on the issue, took the matter under advisement.

Granting motions for change of venue, the Crittenden County Circuit Court ordered the Echols and Baldwin cases transferred to Craighead County and the Misskelley case, which had been severed, transferred to Clay County. Echols and Baldwin were tried together. The Honorable David Burnett, Circuit Judge, presided over the trials of all three defendants.

After the separate criminal trials were concluded, the trial court held a consolidated hearing on April 22, 1994, on the issue of attorneys' fees, expenses, and expert-witness fees. The circuit court found that the state was responsible for all attorneys' fees and that Crittenden County was responsible for all expenses in connection with the trials.

The following attorneys' fees were awarded, to be paid by the state: $30,500 to Val Price; $25,000 to Scott Davidson; $26,000 to Paul Ford; $20,000 to George Wadley; and a joint fee of $40,000 to Daniel Stidham and Gregory Crow. The court awarded the following reimbursements to be paid by Crittenden County for expenses incurred: $3,500 to Mr. Price; $5,500 to Messrs. Ford and Wadley; and $3,500 to Messrs. Stidham and Crow.

Fees were also provided, at county expense, for the various experts who assisted the defense teams: in the Echols case, $7,000 to Ron Lax of Inquisitor, Inc.; in the Baldwin case, $5,100 to Jim Rasicott of AB Communications, Inc., and $3,453.10 to Charles Lynch; and in the Misskelley case, $1,216 to Warren

Holmes of Holmes Polygraph Services, Inc., $1,500 to Dr. Richard Ofshe, $750 to Dr. William Wilkins, $2,005.81 to Dr. Robert Berry of RMB Associates, and no fee for Ron Lax of Inquisitor, Inc.

The state has filed two separate appeals, from Craighead and Clay Counties, and the three defense teams have filed separate cross appeals. Cases No. 94-930 and No. 94-931 have been consolidated for purposes of this appeal.

## *I. Direct appeal (State) — Attorneys' fees*

The central question at the heart of this appeal is whether the State of Arkansas or Crittenden County was responsible for the payment of attorneys' fees in the present matter after June 30, 1993. A survey of the relevant cases leads us to the conclusion that the state must bear the financial burden in this instance.

As mentioned earlier, Act 1193 of 1993 became effective through its emergency clause on July 1, 1993. In the period immediately prior to enactment of this section, this court held that the state was responsible for payment of defense counsel's fees and expenses. *State* v. *Independence County, supra; State* v. *Post, supra.*

Act 1193 was a legislative response to a line of cases involving the payment of fees for appointed counsel. In *Arnold* v. *Kemp,* 306 Ark. 294, 813 S.W.2d 770 (1991), this court held that the statutory "fee caps" set forth in Ark. Code Ann. § 16-92-108(b) (1987) (repealed by Act 1193 of 1993) unconstitutional in their denial to appointed counsel of just compensation and equal protection of the laws. Subsequently, in *State* v. *Post, supra,* a plurality opinion, we declared the remainder of the statute unconstitutional and held that, because no statute delegated the duty of payment of indigents' attorneys' fees to the counties, the state bore responsibility. That holding was reiterated in *State* v. *Independence County, supra.* Within a few months, the General Assembly approved Act 1193, assigning counties the responsibility to pay, except for the costs of the Capital, Conflicts, and Appellate Office, which are to be borne by the state.

Section 8 of Act 1193 of 1993, codified at Ark. Code Ann. § 16-87-210(a) (Supp. 1993), provides that:

When private attorneys or trial public defenders from another area are appointed to represent an indigent person, the attorneys or trial public defenders shall be paid by the county wherein the crime was committed.

The state concedes its responsibility for paying attorneys' fees through June 30, 1993, but insists that, as of July 1, 1993, the effective date of Act 1193, the payment of fees for services rendered by counsel for the indigent defendants in this matter became the duty of Crittenden County.

The circuit court, in its hearings in this regard and in its orders of May 10, 1994, and June 20, 1994, noted that the General Assembly, by enacting Act 1193, intended to provide assistance to the counties in capital murder cases through the creation of the Capital, Conflicts, and Appellate Office, which, however, "was not operational or functioning sufficiently" at the time private attorneys were appointed to represent Echols, Baldwin, and Misskelley. Because neither this service nor local public defenders were available due to circumstances, it was necessary to employ private attorneys, who, as the trial court stated, "received no assistance from said agencies" (*i.e.*, the Capital, Conflicts and Appellate Office).

The Capital, Conflicts, and Appellate Office, created by Section 7 of Act 1193 of 1993, Ark. Code Ann. § 16-87-205 (Supp. 1993), is to be appointed by the trial court "[i]n capital murder cases in which the death penalty is sought, if a conflict of interest is determined by the court to exist between the trial public defender's office and the indigent person, or if for any other reason the court determines that the trial public defender cannot or should not represent the indigent person." Ark. Code Ann. § 16-87-205(c)(1)(A) (Supp. 1993). Provision is also made for the appointment, "as a last resort," of "private attorneys whose names appear on the list of attorneys maintained by the commission." Ark. Code Ann. § 16-87-205(c)(1)(D) (Supp. 1993). Appointed private attorneys, under Section 6 of Act 1193, are to be paid "reasonable fees and compensation for expenses by the county where the crime was committed." Ark. Code Ann. § 16-87-209(f) (Supp. 1993).

The clear intent in the General Assembly's creation of the Capital, Conflicts, and Appellate Office was to allocate to the

state, if at all possible, the burdensome costs of defending capital murder cases. Implicit in the circuit court's orders in this case was a recognition that the primary thrust of the legislation would be thwarted by placing the duty of payment after June 30, 1993, on Crittenden County because the Capital, Conflicts, and Appellate Office was not operational at the time the private attorneys were appointed.

We agree with the circuit court's findings but are of the opinion that this issue may be resolved on a more fundamental level. The provisions of Ark. Code Ann. § 16-87-210(a) apply to instances "*When* private attorneys . . . are appointed. . . ." Act 1193 became effective on July 1, 1993. As the appointments in this case were made before the effective date of the law, they are not governed by it.

## II. Cross-appeal (County) — Expenses

In its cross-appeal, Crittenden County argues that the circuit court erred when it held the county liable for payment of the defense costs, which amounted to $24,553.10 in the Echols and Baldwin case and $8,971.81 in the Misskelley case. The county points to this court's decision in *State* v. *Post, supra*, which held the state "responsible for payment of [the attorney's] fees and expenses." 311 Ark. at 521, 845 S.W.2d at 492. Similarly, in *State* v. *Campbell, supra*, this court placed the duty of paying both fees and expenses on the state.

The state, in its brief, does not respond to Crittenden County's citation of authorities supporting the contention that the state stands responsible for related expenses as stated in *Post, supra*, and *Campbell, supra*. During the period since these decisions were handed down, the legislature has created no statutory vehicle to provide for assessment of trial expenses against the county, and the state offers no compelling rationale for so inconsistent an application of the *Post* and *Campbell* holdings. Rather, the state, giving short shrift to the issue, claims that the same arguments concerning responsibility for attorney's fees apply to the assessment of expenses that were previously discussed in its brief and that there was no need to readdress or reargue the issue.

We disagree for the reasons stated in *Post* — that because there was no longer a statute with reference to the assess-

ment of fees, the state was responsible for the payment of both legal fees and expenses — and again in *Campbell*, where we declared that there was no statutory vehicle at the time for the assessment of fees and expenses against Newton County. Under the circumstances, the trial court erred in not ordering the expenses in question to be paid by the state.

Granted, as the dissent notes, Section 10 of Act 1193 of 1993, codified at Ark. Code Ann. § 16-87-212 (Supp. 1993), and effective July 1, 1993, provides that:

> (a)(1) The commission [Arkansas Public Defender Commission] is authorized to pay expenses regarding the defense of indigents, other than salaries, attorney's fees, and regular office expenses.

> (2) The expenses shall include, but shall not necessarily be limited to, fees for expert witnesses, testing and travel.

> (3)(A) Whenever, in a case involving an indigent person, a judge orders the payment of funds for the aforementioned expenses, the judge shall transmit a copy of the order to the commission, which is authorized in its discretion to pay the funds.

> (B) If the commission declines to pay the funds, the funds shall be paid by the county wherein the crime was committed, provided that the Arkansas Supreme Court may promulgate rules for the stay of such orders in the event that they are contested.

It is unclear from the record whether, at any point in the proceedings, the Arkansas Public Defender Commission (which, unlike the Capital, Conflicts, and Appellate Office, was operational as of July 1, 1993) was requested to pay the specified funds. Yet, as we have stated, we do not apply Act 1193 to the case at hand. When the attorneys were appointed, the *Post* and *Campbell* cases governed the payment of not only attorney's fees but also expenses, and the attorneys in the present case had a right to expect that they would receive compensation for their services and expenses from the state.

As the trial expenses constitute a separable element in the circuit court's judgment, and as a new trial on the issue may thus

be avoided, we direct that, upon remand to the trial court, an order be entered consistent with our holding and that a remittitur be entered in favor of Crittenden County against the State of Arkansas. *See Jacuzzi Brothers, Inc.* v. *Todd,* 316 Ark. 785, 875 S.W.2d 67 (1994).

### *III. Cross-appeal (Counsel) — Amount of fees and expenses*

Cross-appellants Stidham, Crow, Price, and Davidson raise three points for reversal in their cross-appeal. Each concerns the setting by the circuit court of the amount of fees, costs, or compensation for counsel or witnesses. None has merit.

### *a. Adequacy of attorneys' fees*

The attorneys first contend that the circuit court erred in establishing the amount of attorneys' fees because the amounts were inadequate under this court's previous holdings. They assert that they do not seek full compensation but instead seek adequate and reasonable compensation.

Under the standards promulgated in *Arnold* v. *Kemp,* 306 Ark. 294, 813 S.W.2d 770 (1991), the trial court should determine fees that are just, taking into consideration the experience and ability of the attorney, the time and labor required to perform the legal service properly, the novelty and difficulty of the issues involved, the fee customarily charged in the locality for similar legal services, the time limitations imposed upon the client's defense or by the circumstances, and the likelihood, if apparent to the court, that the acceptance of the particular employment will preclude other employment by the lawyer.

In *Price* v. *State,* 313 Ark. 98-A, 856 S.W.2d 10 (1993), *supp. op. on denial of reh'g,* we held that there is no fixed formula for computing remuneration for attorneys and that the supreme court will defer to the superior perspective of the trial court to weigh and apply the factors set forth in *Arnold* v. *Kemp, supra,* based on an intimate familiarity with the proceedings and with the quality of services rendered. Further, we noted that the discretion of the trial court is not to be disturbed on appeal in the absence of abuse.

Here, the trial court had before it evidence of the hours devoted by counsel to the cases and the expenses incurred. Other

attorneys testified concerning their hourly rates for comparable work. The fees awarded in the present case were significantly lower than those cited by other attorneys. Messrs. Stidham and Crow received approximately $21.73 per hour; Mr. Price received approximately $33.06 per hour; and Mr. Davidson received approximately $31.02 per hour.

The record does not reveal that the circuit court arrived at its conclusions regarding the amounts due for attorneys' fees in a cavalier manner. Opportunities were afforded counsel to make their case for higher fees. Moreover, the circuit court was not bound to accept the number of hours submitted by the attorneys. Given the circuit court's mindfulness of the limited resources available from either the state or Crittenden County, it cannot be said that there was an abuse of discretion in the court's decision.

### b. Out-of-pocket expenses

The record indicates that Messrs. Stidham and Crow spent $4,049.11 of their own money in the defense of Misskelley. Of that amount, the circuit court reimbursed $3,500.

In *Arnold* v. *Kemp, supra,* as the cross-appellants note, this court quoted the following statement from State *ex rel. Stephan* v. *Smith,* 747 P.2d 816, 841 (Kan. 1987): "When the attorney is required to advance expense funds out-of-pocket for an indigent, without full reimbursement, the system violates the Fifth Amendment." 306 Ark. at 302, 813 S.W.2d at 774. The quotation appeared in the context of a discussion of property rights in attorneys' services subject to Fifth Amendment protection.

Unlike the situation in *Arnold* v. *Kemp, supra,* here there was no systematic limitation on the amount of expenses recoverable by the attorneys. Indeed, *Arnold* v. *Kemp* entrusts to the sound judgment of the trial court the approval of "such reasonable expenses as are plainly necessary for the defendant to have her day in Court and to permit counsel to fairly and adequately present her case." 306 Ark. at 306, 813 S.W.2d at 777. In this instance, the trial court had before it accounts of services provided and expenses incurred by Messrs. Stidham and Crow. It was within the trial court's discretion to determine the reasonableness of the expenses set forth by the attorneys. The record

does not reveal a violation of the Fifth Amendment in the trial court's decision.

### c. Compensation for experts

By the time of trial, Ark. Code Ann. § 16-92-109 (Supp. 1993) governed the payment of experts and investigative expenses. No guidelines are given by the statute, but *Arnold* v. *Kemp, supra,* as noted above, vests the decision concerning the award of reasonable expenses to the sound discretion of the trial court. Nothing in the record indicates that the circuit court exceeded the bounds of its discretion in setting compensation amounts for the expert witnesses.

Affirmed on direct appeal.

Reversed and remanded for further proceedings consistent with this opinion on cross-appeal of Crittenden County.

Affirmed on cross-appeals of attorneys Stidham, Crow, Price, Davidson, Ford, and Wadley.

BROWN, J., concurs in part and dissents in part.

ROBERT L. BROWN, Justice, concurring in part, dissenting in part. Act 1193 of 1993 which establishes the Trial Public Defender Offices was enacted April 19, 1993, with an effective date of July 1, 1993. Counsel for the three defendants in this case, all of whom were indigent, were appointed by the trial court the previous month in June 1993. Because the Capital, Conflicts, and Appellate Office created under Act 1193 had not been established at the time of the appointments and because the trial court found that that office rendered no assistance to counsel in the trials of these matters, I agree that the State should be responsible for the legal fees to private counsel. Act 1193 clearly contemplates the appointment of the Capital Office in the event of a conflict of interest in the public defender's office. *See* Ark. Code Ann. § 16-87-205 (Supp. 1993).

I see no reason, though, not to follow Act 1193 with regard to other defense costs and expenses incurred after July 1, 1993. Act 1193 provides:

(a)(1) The commission [Arkansas Public Defender Commission] is authorized to pay expenses regarding the

defense of indigents, other than salaries, attorney's fees, and regular office expenses.

(2) The expenses shall include, but shall not necessarily be limited to, fees for expert witnesses, testing, and travel.

(3)(A) Whenever, in a case involving an indigent person, a judge orders the payment of funds for the aforementioned expenses, the judge shall transmit a copy of the order to the commission, which is authorized in its discretion to pay the funds.

(B) If the commission declines to pay the funds, the funds shall be paid by the county wherein the crime was committed, provided that the Arkansas Supreme Court may promulgate rules for the stay of such orders in the event that they are contested.

Ark. Code Ann. § 16-87-212(a) (Supp. 1993).

It is unclear from the record whether the Commission was requested to pay the specified expenses. I would apply Act 1193 and remand the matter of the expenses and costs to the trial court so that the statutory procedure might be followed.